USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/25/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TEKVET TECHNOLOGIES, CO.,                    :
                                             :
                              Plaintiff,     :
                                             :         15 Civ. 7284 (LGS)
              -against-                      :
                                             :         **OPINION AND ORDER**
CRYSTALTECH WEB HOSTING, INC. d/b/a          :
NEWTEK TECHNOLOGY SERVICES,                  :
                                             :
                              Defendant.     :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff TekVet Technologies, Co. ("TekVet") asserts claims against CrystalTech Web Hosting, Inc. d/b/a Newtek Technology Services ("CrystalTech") over the destruction of proprietary software and data that had been housed on CrystalTech's computer servers. Before the Court is CrystalTech's motion to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's motion is DENIED.

## I.   BACKGROUND

The following facts are taken from the SAC, except as otherwise noted, and are assumed to be true for the purposes of this motion. *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

TekVet operates a business that provides health monitoring devices and services for cattle to ranchers and other livestock operators. Since 2007, TekVet has collected health data from its customers' livestock, and used this data to develop algorithms to predict the health of different breeds. In 2007, TekVet became a client of CrystalTech, a company that provides business information storage. According to the SAC, "CrystalTech agreed to house, store and securely

protect TekVet's software and the massive amount of data that TekVet had collected," and "promised to store and protect TekVet's Property on a server dedicated solely to TekVet."

The Terms of Services contract, which Defendant filed in support of its motion, provides:

- "At the sole option of Newtek Technology Services for any reason set forth herein or in the event that You breach any term of this Agreement including but not limited to The Payment of Fees . . . , Newtek Technology Services may suspend Your account by deactivating any access by You and/or by web users to any information contained on the Newtek Technology Services servers related to Your account while maintaining the information and data related to Your account upon the Newtek Technology Services servers."

- "At Newtek Technology Services sole discretion, Newtek Technology Services may provide You with an opportunity to correct such breach or violation.  Upon being notified of an opportunity to correct such breach or violation, if such breach or violation is not corrected the account may be terminated."

- "Upon termination/cancellation, Newtek Technology Services will cut off your site and delete Your Information.  Such information or data may or may not be made available to You by Newtek Technology after any such termination/cancellation."

- "Site Information will be deleted from our servers 14 days after the date this Agreement is terminated/canceled."

In December 2013, TekVet fell behind on its lease payments to CrystalTech.  TekVet and CrystalTech then negotiated a new agreement where CrystalTech would take TekVet's data offline, and store and protect it until TekVet paid its unpaid balance.  Although TekVet would not have access to its data while it was paying off the unpaid balance, CrystalTech guaranteed that it would store the information until February 2014, and that TekVet could retrieve its data after its balance was paid.

The companies renegotiated the payment arrangement at least twice afterwards in March and May 2014.  The March payment arrangement was memorialized in writing and signed by CrystalTech.  In that agreement CrystalTech agreed to continue to store and protect TekVet's data, and assured Plaintiff that its data was safe from destruction.  The SAC alleges that TekVet

relied on these assurances in its decision to continue making payments and to leave its information on CrystalTech's server.

In May 2014, the companies negotiated a new arrangement to allow CrystalTech to pay its unpaid balance (the "May Agreement"). At that time, CrystalTech represented that it was "keeping the server aside" and "doing everything [it could] to make sure the server is off [to] the side and not touched." The May Agreement is in the form of an email from CrystalTech to TekVet, which CrystalTech filed with its motion papers. The May Agreement provides for a $250 payment every two weeks until the last payment in November 2014 for a total of $3,137.47. The May Agreement also states: "We [CrystalTech] can't guarantee the files per our Terms Of Service after 14 days from the deletion date."

Between June 2014 and November 2014, TekVet apparently paid CrystalTech $3,000. CrystalTech accepted late payment at least six times, and never warned TekVet that a late payment would result in the destruction of the data stored on Defendant's server. On December 19, 2014, TekVet paid $250, and was advised by CrystalTech's Billing and Account Management Department that a final payment of $137.47 was due on January 2, 2015. The SAC alleges that when TekVet contacted Defendant to make its final payment, CrystalTech advised Plaintiff that the server would be brought back online immediately so that TekVet could access its data. After accepting the final payment, however, CrystalTech advised TekVet that it had permanently deleted its data on or before December 31, 2014.

TekVet filed suit on September 15, 2015.

**II.    STANDARD**

"On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn*, 795 F.3d at 306. "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (internal quotation marks and alteration omitted). "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nonetheless take the document into consideration in deciding the defendant's motion to dismiss . . . ." *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). "Insofar as the complaint relies on the terms of [an] agreement," courts "need not accept its description of those terms, but may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005); *see also Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit normally controls . . . ."). However, "whatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 563).

**III.    DISCUSSION**

CrystalTech moves to dismiss each of the SAC's asserted claims for gross negligence, conversion and breach of contract under New York law.  As explained below, Defendant's motion is denied as to each claim.

**A. Breach of Contract**

Under New York law,[1] the elements for breach of contract are "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)); *accord Carione v. Hickey*, 20 N.Y.S.3d 157, 158 (2d Dep't 2015).

The SAC sufficiently alleges a claim for breach of contract.  It alleges that in May 2014 the companies negotiated the May Agreement whereby "CrystalTech acknowledged and waived its rights under the original Terms of Service to wipe the server in light of the past due payments" in exchange for a new payment arrangement.  The SAC further alleges that TekVet made at least six payments to CrystalTech and that CrystalTech breached the agreement by permanently deleting Plaintiff's data despite never having warned Plaintiff that it would do so as a result of late payments.  CrystalTech's breach resulted in damages in the form of the value of TekVet's data and software.  In addition, Plaintiff was unable to support its existing customers or deploy its product to new customers.

---

[1]     While the Terms of Services agreement selects New York law in its choice of law provision, the parties do not identify choice of law provisions for any subsequent agreement.  However, "[t]he parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law."  *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009).

Defendant argues that it did not breach any contract and was entitled to delete Plaintiff's data under the Terms of Service because Plaintiff breached the parties' original agreement as well as the May 2014 Agreement by failing to remit timely payment. CrystalTech further argues that any oral modifications of the May Agreement extending TekVet's deadlines for payment are unenforceable under New York law. These arguments do not merit dismissal.

Under New York Law, "[a] party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997). "[B]ased on ordinary contract principles, a non-material breach does not justify nonperformance by the other party." *Id.* at 287. "A waiver is the voluntary abandonment or relinquishment of a known right." *Madison Ave. Leasehold, LLC v. Madison Bentley Assocs. LLC*, 811 N.Y.S.2d 47, 50 (1st Dep't 2006) (internal quotation marks omitted). "Any provision of a contract is subject to waiver, particularly a provision requiring timely payment." *Id.* at 51.

The May Agreement states: "Management has approved to allow you to make $250 payments every other week until the balance is paid"; and further states: (1) "[w]e have been keeping the server aside for you," (2) "[w]e can't guarantee the files per our Terms of Service after 14 days from the deletion date" and (3) "[w]e have been doing everything we can to make sure the server is off [to] the side and not touched." The May Agreement also lists the "dates and payments that need to be made," and informs TekVet that the CrystalTech associate would be "following up with" Plaintiff on thirteen dates ending on November 21, 2014.

CrystalTech argues that TekVet breached the May Agreement by failing to pay its balance by November 21, 2014. However, even accepting Defendant's argument that the May Agreement (without any oral amendments) is the governing contract, CrystalTech cannot

establish that Plaintiff's late payments constituted a material breach that would authorize CrystalTech's deletion of TekVet's information pursuant to the original Terms of Service contract. The SAC alleges that although TekVet's payments were late on at least six occasions, "CrystalTech continued to accept TekVet's payments and reassure TekVet that its Property was safely stored and, per the terms of the Parties' agreement, the server with TekVet Property could be reactivated as soon as the unpaid balance was paid." On December 19, 2014 -- nearly a month after the final payment was originally due -- CrystalTech accepted a $250 payment, told a TekVet employee that a final payment of $137.47 would be due on January 2, 2015, and assured her that Plaintiff's server would be brought back online on that date. At no point prior to CrystalTech's deletion of Plaintiff's information on or about December 31, 2014, did it warn TekVet that it would enforce strict compliance with the May 2014 agreement's payment schedule.

Accepting these facts as true, any late payments may not have constituted a material breach of the May 2014 agreement or, in the alternative, were waived by Defendant's continued acceptance of these payments without protest. *See Encompass Ins. Co. of Am. v. English*, No. 11 Civ. 2606, 2013 WL 796309, at *6 (S.D.N.Y. Mar. 5, 2013) (denying summary judgment on issue of breach after "[d]rawing all reasonable inferences in [non-movant's] favor" and due to "'fact-intensive analysis' required to determine materiality"); *Madison Ave. Leasehold, LLC*, 811 N.Y.S.2d at 52 ("Out of simple fairness, a party that has repeatedly waived a condition of performance, particularly the timeliness of payment, is required to give notice that its waiver has been withdrawn before demanding strict compliance with the condition.").

CrystalTech argues that "New York law is clear that the failure to make a payment under a contract is a material breach of contract." The cases Defendant cites in support of this

proposition are inapposite, however, as TekVet had already paid most of its balance when CrystalTech allegedly deleted its information. In *Jafari v. Wally Findlay Galleries*, the court held on a motion for summary judgment that a party's "failure to pay within [a certain amount of time] amounts to a material breach of the contract." 741 F. Supp. 64, 68 (S.D.N.Y. 1990). The *Jafari* case is distinguishable because it did not involve a situation where one party had already nearly completed its payments, and because the court had previously held that the party owing payment "was aware at the time the agreement was formed that a time constraint underlay the entire contract." *Id.* at 67. Similarly, in *Municipal Capital Appreciation Partners, I, L.P. v. Page*, the court at summary judgment held that the "Defendants' failure to pay the over five million dollars owed" for bonds on a certain date constituted a material breach, but that case did not involve either partial (and near complete) payments or alleged commitments to accept payment at a later date. 181 F. Supp. 2d 379, 395 (S.D.N.Y. 2002).

The May Agreement does not "incontrovertibly contradict[] the allegations in the complaint," *Bogie*, 705 F.3d at 609, concerning CrystalTech's acceptance of late payment or its promises to store TekVet's data until January 2, 2015. CrystalTech's motion to dismiss the breach of contract claim is therefore denied.

    **B.  Gross Negligence**

The SAC also adequately pleads a claim of gross negligence.

"'Under New York law, . . . a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (quoting *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)). Conduct rises to the level of gross negligence when the conduct

"evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *AT&T Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) (quoting *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1993)) (internal quotation marks omitted).

The SAC alleges that CrystalTech owed TekVet a duty to keep Plaintiff's data safe and secure. Specifically, the SAC alleges that as part of the May Agreement CrystalTech represented it was "keeping the server aside" and "doing everything [it could] to make sure the server is off [to] the side and not touched." This duty was breached when CrystalTech instead deleted Plaintiff's information from its server, which caused TekVet damages. As to the "reckless disregard" element, the SAC alleges that CrystalTech accepted a payment on December 19, 2014, and reassured TekVet that it would regain access to the server housing its data after making a final payment on January 2, 2015. Despite this reassurance, Defendant allegedly deleted Tekvet's data on or before December 31, 2014. Finally, the SAC alleges that when TekVet was about to pay off its remaining balance, CrystalTech once again assured it that the server would brought back online. Only after CrystalTech received the final payment did it inform TekVet that it had already deleted Plaintiff's data. Accepting these allegations as true, the SAC adequately pleads a claim of gross negligence.

CrystalTech argues that the gross negligence claim is barred by New York's "economic loss doctrine," under which "the action should proceed under a contract theory" when "[a] plaintiff is essentially seeking enforcement of the bargain." *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 79 N.Y.2d 540, 552 (1992). Defendant's argument is rejected.

"[C]ourts have applied the economic loss rule to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort."

*Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir. 2000). The economic loss doctrine makes exception, however, for actions against "[p]rofessionals, common carriers and bailees," who "may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties." *Sommer*, 79 N.Y.2d at 551.

Based on the SAC's allegations concerning "the nature of the injury, the manner in which the injury occurred and the resulting harm," the economic loss doctrine does not merit dismissal of Plaintiff's gross negligence claim. *Id.* at 552. First, the terms of the original Terms of Service contract do not foreclose the possibility of a bailment, in light of the May Agreement and the parties' course of conduct. Although Defendant's memorandum of law quotes various provisions of the Terms of Service agreement to argue that CrystalTech only *leased* space on its servers to TekVet, the SAC also relies on the subsequent May Agreement. Under that agreement, CrystalTech (1) "agreed to continue to keep TekVet's Property set aside on a dedicated server," (2) "acknowledged and waived its rights under the original Terms of Service to wipe the server in light of past due payments" and (3) promised to take measures to ensure the server with Plaintiff's data would not be touched.

Second, the SAC adequately pleads that CrystalTech took exclusive possession of TekVet's data after it denied Plaintiff access to the server on which it was stored. "The determination as to whether a relationship is one of bailor and bailee turns on whether there is a relinquishment of exclusive possession, control, and dominion over the property." 9 N.Y. Jur. 2d Bailments and Chattel Leases § 3. Even assuming TekVet merely leased space on CrystalTech's server under the original Terms of Service agreement, the nature of this arrangement arguably changed in December 2013, when CrystalTech took TekVet's data and information offline and stored it on a dedicated server to which Plaintiff was denied access. At that point, CrystalTech

10

took exclusive possession, control, and dominion of the data Tekvet had stored (and previously accessed) on Defendant's servers.

Plaintiff's relinquishment of control over its data and CrystalTech's affirmative representations to safeguard that data until TekVet paid off the balance of its account are sufficient to allege a bailment giving rise to an independent duty of care. *See Aronette Mfg. Co. v. Capitol Piece Dye Works*, 160 N.E.2d 842, 845 (N.Y. 1959) ("[T]he bailee was obliged, in the absence of an express agreement to the contrary, to exercise ordinary care in relation to the article bailed."). The gross negligence claim therefore is not barred by the economic loss doctrine, and Defendant's motion to dismiss the claim is denied.

### C. Conversion

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006). The elements of conversion are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id*. (internal citations omitted). In *Thyroff v. Nationwide Mutual Insurance Co.*, the New York Court of Appeals held that "electronic records that were stored on a computer and . . . indistinguishable from printed documents—[are] subject to a claim of conversion in New York." 864 N.E.2d 1272, 1278 (N.Y. 2007).

Defendant argues that the conversion claim should be dismissed because the claim is barred by the economic loss doctrine and duplicative of the breach of contract claim, and because CrystalTech was acting within its contractual rights when it deleted Plaintiff's data. None of CrystalTech's arguments warrant dismissal.

For the reasons set forth above, the economic loss doctrine does not bar TekVet's claims sounding in tort, and Plaintiff's conversion claim -- an element of which is an intentional act by Defendant -- is permissibly pleaded in the alternative to its gross negligence claim. Defendant's assertion that "Plaintiff's breach [of the Terms of Service contract] gave the Defendant the absolute right to terminate the Agreement and erase the Server", does not warrant dismissal in light of the SAC's allegations that CrystalTech waived its right to wipe the server in the May Agreement, and affirmatively committed to store and protect Tekvet's data until Plaintiff could repay its outstanding balance.

Defendant's motion to dismiss the conversion claim is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED.  The Clerk of Court is directed to close the motion at Dkt. No. 31.

SO ORDERED.

Dated: April 25, 2016
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

12